## Flinn and Stevens v. Roberts and Bishop.

(Decided December 19, 1924.)

### Appeal from Owsley Circuit Court.

Estoppel—Surveyor, Standing by and Seeing Claimant Sell Unappropriated Land, Precluded from Setting up Subsequently Acquired Patent.—Where owner and prospective purchasers of land procured a surveyor to survey it, and he stood by and saw owner sell such land, knowing that owner claimed it all, but that boundary embraced unappropriated land not covered by descriptions in owner's title papers, held that he could not thereafter set up as against purchaser patent title to such unappropriated land acquired from Commonwealth.

MARTIN T. KELLY for appellants.

HARRY C. EVERSOLE for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

Appellants asked the lower court to enjoin appellees from going upon or cutting timber from a certain tract of land, and to quiet their title thereto. This relief was denied them, and the court decided that the land belonged to appellees.

Appellants are the children and heirs of Elisha Flinn, and as such are asserting title to the land in controversy under a deed made to their father in 1910 by G. W. Burns. In 1887, or prior thereto, G. W. Burns had purchased of various parties several tracts of land, all near together and three of them contiguous to each other.

These three tracts were the G. W. Baker tract of 100 acres, the Robert Baker tract of 100 acres and the Jeremiah Fields tract of 150 acres. The north end of the G. W. Baker tract overlaps the north end of the Robert Baker tract and the north end of the Fields tract overlaps the south end of both of the Baker tracts. These three tracts enclose or surround a trapeziform tract of land, containing 38 acres, which is the subject matter of this controversy.

After his purchase of the two Baker tracts and the Fields tract, G. W. Burns was in continuous possession thereof, either in person or through his tenants until 1910, when he sold to Flinn. The elder Flinn and the appellants have had same in possession through tenants since that time. We have been unable to find how the appellee, Bishop, had even the semblance of an interest in

this land, but it seems that the appellee Roberts procured from the Commonwealth on January 8, 1920, a patent for this 38-acre tract, under which he now claims to own same.

Some time about 1910, one T. C. Fuller induced G. W. Burns and perhaps others, to contract to sell their land to or through Fuller. Fuller interested Elisha Flinn in the property, and quite a body of land was sold to Flinn through the activities of Fuller; the exact acreage is not disclosed, but it was apparently a good sized tract as the description consists of about four pages of typewritten matter.

In the course of these negotiations, it became necessary to have some surveying done. Appellee Roberts is a surveyor, and is a brother-in-law of G. W. Burns, so very naturally, Burns procured Roberts to survey his property. Burns testified that he employed Roberts to do this surveying for the purpose of ascertaining whether or not there was any vacant or unappropriated land in the "Still House" or "Bear Branch" hollow. This 38-acre tract, it seems, is situated in a hollow that is known by these two names. He testified that Roberts did the surveying, and found no vacant or unappropriated land in this hollow.

Alfred H. Burns testified that he assisted in this survey, and was the flagman; that he assisted in marking and painting the big sweeping boundary by which the land purchased by Flinn was enclosed.

Roberts admits that he was employed by Fuller to survey the Burns land, and make a plat of it, and that he did so; but he denies that he was employed by Burns to survey this land to ascertain if there was any vacant or unappropriated land in this "Still House" or "Bear Branch" hollow.

One thing is certain. When Roberts surveyed this land, whether under the employment of Burns or Fuller, who was trying to sell the land for Burns, he must have found almost in the center of the Burns land this 38 acres, which he now says is not covered by or embraced in the Baker patents and the Fields patent, but which he admits is surrounded and enclosed by them. He was there in a professional capacity, doing for these men something they could not do for themselves, and good faith required that he should have said to Burns that he had found almost in the center of his land in this hollow, 38 acres of land not covered by the descriptions in

his title papers. He said nothing. He stood by and saw his brother-in-law, Burns, sell this boundary of land to Flinn, the 38 acres along with the rest, he saw the lines marked and painted, he knew that Burns had claimed it, he knew that some one had cleared a portion of it and he knew that Burns thought he owned all of the land within the boundary he was selling, and was trying to sell it; he knew that his employment to survey the land was a part of the activities of Burns to accomplish a sale. As he knew all this, he did wrong when he said nothing under those circumstances. Having said nothing, and having used the information which he probably then acquired to procure title to himself, he should not be allowed to profit thereby.

The judgment is reversed and the cause remanded with directions to grant the relief prayed for in the petition.